**In re Liudmila A. STOROZHENKO, Debtor.**

No. 11–57443.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Sept. 16, 2011.

Aaron J. Scheinfield, Goldstein Bershad & Fried PC, Southfield, MI, for Debtor.

## OPINION REGARDING DEBTOR'S "MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY"

THOMAS J. TUCKER, Bankruptcy Judge.

This opinion concerns the scope of the "criminal action or proceeding" exception to the automatic stay, contained in 11 U.S.C. § 362(b)(1). The case came before the Court for hearing on August 24, 2011 on two motions. This opinion concerns one of those motions, namely the Debtor's motion entitled "Motion for Sanctions for Violation of the Automatic Stay" (Docket # 28, the "Motion"). For the reasons stated below, the Court will grant this Motion in part, and deny it in part.

### I. Background

In her Motion, the Debtor, Liudmila Storozhenko, seeks damages against a state court receiver, David Findling, based on 11 U.S.C. § 362(k)(1),[1] due to Findling's alleged violation of the automatic stay ap-

---

1. Section 362(k)(1) states, with an exception not applicable here, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

plicable under 11 U.S.C. § 362(a). Debtor claims that Findling violated the automatic stay by filing a motion in the Oakland County Circuit Court case of *Liudmila Storozhenko v. Vladimir Nozhnik,* Case No. 09–762704DO (the "State Court Case"), seeking an order holding the Debtor in criminal contempt (the "Criminal Contempt Motion") for the Debtor's alleged violation of several previous orders entered in the State Court Case. Debtor's alleged violation of state court orders occurred before the Debtor filed this bankruptcy case. Findling filed his Criminal Contempt Motion in the state court on July 20, 2011, after the Debtor had filed this Chapter 7 bankruptcy case on June 23, 2011.

The pre-bankruptcy history between Findling and the Debtor is rather long and complicated, but the story can be simplified for purposes of this opinion. Findling was appointed by the Oakland County Circuit Court as a receiver in two related divorce cases—first, in the divorce case filed in 2006 between Vladimir Nozhnik and Esfir Nozhnik; and second, in the divorce case filed in 2009 between Vladimir Nozhnik and the Debtor (which case is referred to sometimes in this opinion as the "State Court Case"). After Vladimir Nozhnik was divorced from Esfir Nozhnik, in the 2006 case, he married the Debtor. The Debtor later sought a divorce from Vladimir, by filing the second divorce case, in 2009.

Findling alleged in his Criminal Contempt Motion that there were three different orders, all entered in the Debtor's 2009 divorce case, that contained injunctions restricting what the Debtor could do with her assets, including a personal injury claim that the Debtor filed in 2009 against several third parties.

In his capacity as receiver, Findling claims to be a creditor of the Debtor.

Among other possible claims, Findling obtained a judgment against the Debtor in the 2009 divorce case, based on a finding of civil contempt, in the amount of $106,144.73. That state court judgment was entered on June 22, 2011, one day before the Debtor filed her bankruptcy case.

In the Criminal Contempt Motion, Findling alleged that the Debtor settled her personal injury claim, and received $46,862.08 in settlement proceeds, on or about March 22, 2011. Findling alleged that these actions by the Debtor violated the three previous injunctions entered by the state court. Findling asked the state court to grant the following relief against the Debtor:

> WHEREFORE, the Court Appointed Receiver, David Findling prays that this Honorable Court enter an order to show cause pursuant MCR 3.606(A)(1):
>
> a. Enter an order requiring Liudmila Storozhenko to appear and show cause why she should not be held in criminal contempt pursuant to MCL 600.1701(g), (h) and (m);
>
> b. Order Liudmila Storozhenko to pay the criminal fine of $7,500 pursuant to MCL 600.1715(1);
>
> c. Commit Liudmila Storozhenko to the Oakland County jail to serve a penal sentence of ninety-three (93) days pursuant to MCL 600.1715(1); and
>
> d. Order Liudmila Storozhenko to pay criminal restitution in the amount of forty six thousand eight hundred and sixty-two and 08/100 dollars ($46,862.08) together with Receiver's fees and costs incurred in the investigation of her con-

tempt and the prosecution of same.[2]

## II. Jurisdiction

This Court has subject matter jurisdiction over this case and over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This contested matter is a core proceeding under 11 U.S.C. § 157(b)(2)(A) and (O), and because it is a proceeding "arising under title 11" within the meaning of 11 U.S.C. §§ 157(a) and 157(b)(1). It "aris[es] under title 11" because it "involve[s] a cause of action created or determined by a statutory provision of title 11," namely, 11 U.S.C. § 362(k)(1). *See Allard v. Coenen (In re Trans–Industries, Inc.),* 419 B.R. 21, 27–28 (Bankr. E.D.Mich.2009).

## III. Discussion

### A. The disputed issue

Findling admits that he knew of the Debtor's pending Chapter 7 bankruptcy case when he filed the Criminal Contempt Motion in the state court. But he argues that this was not a violation of the automatic stay under 11 U.S.C. § 362(a), because of the "criminal action or proceeding" exception to the automatic stay in 11 U.S.C. § 362(b)(1). That section states that "the filing of a petition ... does not operate as a stay—(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor."

Findling argues that under the case law interpreting this stay exception, his filing of the Criminal Contempt Motion must be deemed the commencement of a "criminal action or proceeding," and therefore not subject to the automatic stay. This is so,

according to Findling, because his "primary motivation" in filing the Criminal Contempt Motion was not to collect a pre-petition debt owed by the Debtor, but rather to uphold the authority of the state court by seeking criminal punishment of the Debtor for violation of the state court's orders.

Debtor, on the other hand, argues that Findling's motive in filing the Criminal Contempt Motion, at least in part, was to collect a pre-petition debt. Because of this, Debtor says, the "criminal action or proceeding" exception in § 362(b)(1) does not apply, and Findling's action violated the automatic stay.

### B. If and to the extent the § 362(b)(1) exception does not apply, Findling has willfully violated the automatic stay

█ Initially, the Court holds that if and to the extent the "criminal action or proceeding" exception does *not* apply, then Findling did violate the automatic stay under 11 U.S.C. § 362(a)(1), and possibly other provisions of § 362(a). Findling does not dispute this, and this is so because, at a minimum, Findling's filing the Criminal Contempt Motion, after the Debtor filed bankruptcy, was "the commencement ... of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(1). All of the Debtor's conduct that Findling's Criminal Contempt Motion alleges constituted the contempt occurred on or about March 22, 2011, according to Findling's motion.[3] Findling, therefore, could have filed the Criminal Contempt Motion before Debtor

---

2. Docket # 28, Ex. 4 at 3–6.

3. Docket # 28, Ex. 4 at 4 ¶ 14.

filed her Chapter 7 case on June 23, 2011, for purposes of § 362(a)(1).

As noted above, Findling admits that he knew of the Debtor's bankruptcy filing before he filed the Criminal Contempt Motion on July 20, 2011. Findling is an experienced bankruptcy attorney, and as he admits, he certainly knew that the automatic stay arose under § 362(a) upon the filing of Debtor's bankruptcy case. Thus, if Findling's conduct is found to have violated the automatic stay, such violation must be deemed be a "willful" violation within the meaning of 11 U.S.C. § 362(k)(1). *See, e.g., In re Sharon,* 234 B.R. 676, 687–88 (6th Cir. BAP 1999) (a "willful" stay violation occurs when "the creditor knew of the stay and violated the stay by an intentional act;" intent to violate stay is not necessary).

### C. The § 362(b)(1) exception applies to Findling's Criminal Contempt Motion only in part

The question therefore becomes whether and to what extent the § 362(b)(1) "criminal action or proceeding" exception to the automatic stay applies. On this question, the Court takes a different view of the law than the parties do. As explained below, the Court finds it unnecessary to determine what Findling's actual motives were, or what his "primary motivation" was, for filing the Criminal Contempt Motion.

### 1. The distinctions between criminal contempt and civil contempt

The Court must begin by noting the distinctions between a criminal contempt proceeding, and a civil contempt proceeding. A Sixth Circuit case that provides thorough guidance on this subject is *United States v. Bayshore Associates, Inc.,* 934 F.2d 1391 (6th Cir.1991). *Bayshore* was not a bankruptcy case, but it supplies the principles this Court must use to deter-

mine whether and to what extent Findling's Criminal Contempt Motion is a "criminal action or proceeding" within the meaning of § 362(b)(1), as opposed to a civil contempt proceeding. To the extent Findling's criminal contempt motion is the latter, he has violated the automatic stay.

■ *Bayshore* held several things relevant to this case. First, it held that in determining whether any particular contempt proceeding or contempt sanction is criminal in nature, as opposed to civil, the trial court's characterization of the proceeding as either civil or criminal is not determinative. 934 F.2d at 1401. The court must "look to the purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below." *Id., quoting In re Kave,* 760 F.2d 343, 351 (1st Cir.1985).

■ Second, the same conduct—for example, violation of a court's order—"may be subject to both criminal and civil contempt sanctions." *See id.* at 1400.

■ Third, a single contempt order may contain both criminal and civil sanctions, and if it does, "the two types of sanctions are severable" such that the portions of a contempt order that are criminal may be vacated, if procedures required in a criminal contempt action were not followed, while leaving intact the civil contempt sanctions portion of the order. *Id.*

■ Fourth, civil contempt is remedial in nature, while criminal contempt is punitive:

Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant. *See United States v. Mine Workers,* 330 U.S. 258, 303–04 [67 S.Ct. 677, 91 L.Ed. 884] (1947) (purpose of civil contempt is "to coerce the defendant into compliance with the court's order, and to

compensate the complainant for losses sustained"); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 [31 S.Ct. 492, 55 L.Ed. 797] (1911) (in civil contempt "the punishment is remedial, and for the benefit of the complainant"); *Spindelfabrik Suessen–Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568, 1578 (Fed.Cir.1990). Whereas, the purpose of criminal contempt is punitive—"to vindicate the authority of the court." *Gompers*, 221 U.S. at 441, 31 S.Ct. 492. *Id.* (citations edited).

■ Fifth, incarceration can be either a civil contempt sanction or a criminal contempt sanction, depending upon the nature of the incarceration:

> Incarceration has long been established as an appropriate sanction for civil contempt. *See, e.g., Hicks v. Feiock*, 485 U.S. 624, 632, [108 S.Ct. 1423, 99 L.Ed.2d 721] (1988) ("If the relief provided is a sentence of imprisonment, it is remedial if the defendant stands committed unless and until he performs the affirmative act required by the court's order, and is punitive if the sentence is limited to imprisonment for a definite period."); *Shillitani v. United States*, 384 U.S. 364, 370 [86 S.Ct. 1531, 16 L.Ed.2d 622] (1966) ("Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance."); *Gompers*, 221 U.S. at 442, 31 S.Ct. 492 ("If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order.") As used in the civil context, however, incarceration must be conditional. That is, once the defendant performs the act re-

quired by the court, he must be released. The Supreme Court noted in *Hicks* that "[t]he critical feature that determines whether the remedy is civil or criminal in nature is not when or whether the contemnor is physically required to set foot in a jail but whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." 485 U.S. at 635 n. 7, 108 S.Ct. 1423. *Cf. Roe v. Operation Rescue*, 919 F.2d 857, 869 (3d Cir.1990) ("If the contemnor is imprisoned for a definite period ... the contempt proceeding is, by definition, criminal."); *SEC v. Simpson*, 885 F.2d 390, 395 (7th Cir. 1989) ("A criminal contempt proceeding is characterized by the imposition of an unconditional and determinate sentence for the purpose of punishment or deterrence.")

*Id.* (citations edited).

■ Sixth, a fine for contempt, including monetary relief labeled as criminal restitution, can be either criminal or civil. As the Sixth Circuit explained, in *Bayshore*:

> There are two types of civil fines: "The first kind is payable to the complainant as compensation for damages caused by the contemnor's noncompliance." *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir.1990); *see Hicks*, 485 U.S. at 632 [108 S.Ct. 1423]. "Such fine must of course be based upon evidence of complainant's actual loss[.]" *United States v. Mine Workers*, 330 U.S. 258, 304 [67 S.Ct. 677, 91 L.Ed. 884] (1947). The government did not introduce any evidence as to its "actual losses" in the contempt hearing. Also, Bayshore was instructed to pay the fine to the court rather than to the government. Thus, the fine was not compensatory.

"The second kind [of fine for contempt] is payable to the court, but defendant can avoid paying the contempt fine by performing the act required by the court's order." *Operation Rescue,* 919 F.2d at 868; *see Hicks,* 485 U.S. at 632 [108 S.Ct. 1423]. Bayshore could not avoid paying the fine. "The purpose of the fine, therefore, was to 'serve as a true deterrent,' *i.e.,* to discourage [the defendant] from future violations." *Spindelfabrik,* 903 F.2d at 1579.

*Id.* at 1400–01 (citations edited).

### 2. Application of the *Bayshore* principles to Findling's Criminal Contempt Motion

The Court now applies these principles to Findling's Criminal Contempt Motion. The motion was labeled as a motion to hold the Debtor in criminal contempt. This label, however, is not determinative. In assessing the purpose and character of the sanctions requested by Findling in his contempt motion, the Court concludes that the Motion seeks both criminal contempt sanctions and civil contempt remedies.

### (a) The criminal contempt components of Findling's motion

■ The *criminal* contempt sanctions are those listed in subparts (a) through (c) in the prayer for relief, on the last page of Findling's Criminal Contempt Motion, previously quoted in Section I of this opinion. The request to hold Debtor in criminal contempt, contained in subparagraph (a), is clearly a criminal contempt sanction. The request to require Debtor to pay "the criminal fine of $7,500 pursuant to MCL 600.1715(1)," contained in subpart (b), is a request for a criminal contempt fine, because such fine would be payable to the

Court, rather than to the complainant, Findling, and because such fine is in an amount set by the Michigan statute for criminal contempt. It is not based upon or tied in any way to the damages caused by Debtor's alleged violation of the state court orders. The Michigan statute includes a fine of not more $7,500.00 and expressly labels it as "punishment for contempt." Mich.Comp.Laws § 600.1715(1).

The jail sentence of 93 days, "pursuant to MCL 600.1715(1)," requested in subpart (c) of Findling's Criminal Contempt Motion, is also a criminal contempt sanction, rather than incarceration that can be viewed as civil in nature. The Michigan statute cited by Findling in his request permits, as "punishment for contempt," "imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform, shall not exceed 93 days, ... in the discretion of the court." *Id.* In requesting this maximum 93–day imprisonment, Findling clearly is seeking a criminal contempt sanction. It is punitive in nature (criminal) rather than remedial (civil), because the sentence is limited to imprisonment for a definite period, and the requested imprisonment is not conditioned such that the Debtor may avoid incarceration by performing some affirmative act required by the state court's previous orders. *Bayshore,* 934 F.2d at 1400. There is no indication in Findling's request for this incarceration that "the contemnor can avoid the sentence imposed on [her], or purge [herself] of it by complying with the terms of the original order."[4] "If the contemnor is imprisoned for a definite period ... the contempt proceeding is, by

---

**4.** The latter type of conditional prison sentence is provided for in a different section of the Michigan statute than the one cited by

Findling in his Criminal Contempt Motion, namely Mich.Comp.Laws § 600.1715(2).

definition, criminal." *Bayshore*, 934 F.2d at 1400 (citations omitted).

### (b) The civil contempt component of Findling's motion

■ The relief requested in subpart (d) of Findling's contempt motion is civil, not criminal. There Findling requests that the Debtor be required to pay "criminal restitution" in the amount of $46,862.08 "together with Receiver's fees and costs incurred in the investigation of her contempt and the prosecution of same." Although Findling designated this relief as "criminal restitution," it is not one of the forms of relief that the Michigan contempt statute, Mich.Comp.Laws § 600.1715, lists as one of the possible remedies to "punish" criminal contempt. Restitution is not mentioned in this statute at all. And this is not a criminal contempt sanction under the principles set forth in the *Bayshore* case. This sanction is clearly designed to be remedial and compensatory, and therefore is a civil contempt sanction, notwithstanding the "criminal restitution" label that Findling places on it. Monetary relief for contempt that is remedial, for the benefit of the complainant, and that is designed to compensate the injured complainant, is in the nature of civil contempt, rather than criminal contempt. *Bayshore*, 934 F.2d at 1400 (quoted above).

Findling's request for his fees and costs incurred is obviously compensatory and remedial. The $46,862.08 amount requested by Findling as part of the "criminal restitution" relief is also compensatory—it is the exact amount alleged by Findling to have been received and retained by the Debtor in violation of the underlying state court orders.[5]

For these reasons, the Criminal Contempt Motion filed by Findling must be viewed as including both criminal contempt components and a civil contempt component, and therefore as having commenced a contempt proceeding that is both criminal and civil. The contempt proceeding Findling initiated is a *civil* contempt proceeding, under *Bayshore* and for purposes of § 362(b)(1), to the extent Findling's contempt motion seeks "criminal restitution" (subpart (d) of the relief requested in Findling's motion). In seeking that relief, therefore, Findling does not have the benefit of the "criminal action or proceeding" exception to the automatic stay in § 362(b)(1), and he has violated the automatic stay. It follows that any further pursuit by Findling in the state court of such relief, and any award of such relief by the state court, would also violate the automatic stay.

To the extent of all of the other relief sought by Findling's Criminal Contempt Motion, the Motion *is* protected by the "criminal action or proceeding" exception of § 362(b)(1), and Findling did not violate the automatic stay. It follows that Findling may continue to pursue such relief in the state court, without violating the automatic stay.

### 3. Findling's motives in filing his Criminal Contempt Motion are irrelevant in determining whether he violated the automatic stay

■ To the extent Findling's Criminal Contempt Motion has been found to be criminal in nature, under *Bayshore*, as just described, Findling's motives in filing the motion are immaterial. Findling does not lose the benefit of § 362(b)(1) to the extent he filed a contempt motion that is truly a criminal contempt proceeding, even if his primary motive, or his sole motive, was to try to pressure or force the Debtor into

**5.** *See* Docket # 28, Ex. 4, at 4 ¶ 15.

paying a pre-petition debt. If the proceeding is criminal, the § 362(b)(1) exception applies, and the automatic stay does not apply.

In so concluding, the Court acknowledges that there is a split in the reported cases over the relevance, if any, of a creditor's motives in this context. Some cases hold that if a creditor's primary motive in pursuing criminal charges against a bankruptcy debtor is to collect a prepetition debt, then such action by the creditor violates the automatic stay, and is not protected by the § 362(b)(1) exception. *See, e.g., Dorsey v. Prokos Check Cashing (In re Dorsey)*, 373 B.R. 528, 531–32 (Bankr. N.D.Ohio 2007), citing *Batt v. American Rent-All (In re Batt)*, 322 B.R. 776, 779 (Bankr.N.D.Ohio 2005).

Other cases, including an *en banc* decision of the Ninth Circuit, hold that such a creditor's motives are irrelevant, and that the § 362(b)(1) exception applies to any criminal proceeding, even if it was pursued by the creditor solely to collect on a prepetition debt. And these cases do not consider the creditor's motives in determining whether the state court action is criminal in nature, rather than civil. *See, e.g., Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1085–87 (9th Cir.2000) (*en banc*); *Pickett v. Quinn (In re Pickett)*, 321 B.R. 663, 668 (Bankr.D.Vt. 2005); *In re Bibbs*, 282 B.R. 876, 878–79, 880 (Bankr.E.D.Ark.2002)(collecting numerous cases on both sides of the issue, but following *Gruntz*).

In *Gruntz*, for example, a bankruptcy debtor was charged and convicted under two California Penal Code sections, one for failure to support dependent children, and one for failing to obey a state court order. The prosecutions had been instigated by the debtor's ex-wife. 202 F.3d at 1077. The debtor argued that this violated the automatic stay, because "the purpose of

the criminal actions against him is debt collection." *Id.* at 1085. The Ninth Circuit noted that the debtor's argument was supported by an earlier Ninth Circuit decision, *Hucke v. Oregon*, 992 F.2d 950 (9th Cir.1993). *Id.* And the court noted that "[b]ankruptcy courts have attempted an array of tests for assaying any hint of a collector in the prosecutor's guise, such as examining the primary motivation for the prosecution or applying a 'bad faith' test." *Id.* at 1085 n.10 (citations omitted). But the *Gruntz* court rejected this approach, and overruled its earlier decision in *Hucke*, *id.* at 1085–87, reasoning as follows:

> *Hucke* held that, if a criminal proceeding has the collection of a debt as its underlying aim, then the automatic stay imposed by 11 U.S.C. § 362(a)(6) would apply and the criminal action would be enjoined. This is in accordance with the views of several commentators, who regard the exception contained in § 362(b)(1) as being limited to those proceedings "brought for the purpose of enforcing the criminal law." *See, e.g.,* 3 Collier on Bankruptcy 362–48 (15th ed. 1999).

Although *Hucke* was well within the mainstream of thought at the time, it is time to reexamine it. Other circuits have declined to follow our lead and, as this case demonstrates, it is a doctrine difficult to apply in practice. Most importantly, it is at odds with the plain words of the statute. Quite simply, the Bankruptcy Code declares that § 362 does not stay "the commencement or continuation of a criminal action or proceeding against the debtor." On its face, it does not provide any exception for prosecutorial purpose or bad faith. If the statutory command of the Bankruptcy Code is clear, we need look no further: it must be enforced according to its terms. *See United States v. Ron*

*Pair Enterprises, Inc.*, 489 U.S. 235, 241 [109 S.Ct. 1026, 103 L.Ed.2d 290] (1989). Indeed, to do otherwise would insert phrases and concepts into the statute that simply are not there.

*Id.* at 1085 (footnote and some citations omitted).

This Court finds the reasoning of the *Gruntz* case persuasive, and follows it. The Court therefore concludes that Findling's motives in filing the Criminal Contempt Motion are not relevant to the issue of whether and to what extent that motion is deemed to be a "criminal action or proceeding" under the automatic stay exception in § 362(b)(1).

### D. Relief

#### 1. "Actual damages" under § 362(k)(1)

The Court concludes that Findling willfully violated the automatic stay, to the extent described above. It follows that Debtor is entitled to an order requiring Finding to pay Debtor any "actual damages, including costs and attorneys' fees," suffered by the Debtor because of Findling's stay violation. The Court's order will provide a procedure for Debtor to file an itemization of such claimed damages, including costs and attorney fees, and for Findling to file any objections he may have to the amount and reasonableness of such claimed damages. 11 U.S.C. § 362(k)(1).

#### 2. Punitive damages under § 362(k)(1)

 Debtor's Motion also requested that the Court award punitive damages against Findling. This case does not present "appropriate circumstances" for punitive damages under § 362(k)(1). Punitive

damages for a willful stay violation are awarded in response to "particularly egregious conduct for both punitive and deterrent purposes.... To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.'" *In re Timbs*, 178 B.R. 989, 998 (Bankr.E.D.Tenn.1994) (citations omitted). Under the circumstances, the Court finds that Findling's conduct in violating the automatic stay was not egregious. And there is no evidence that Findling acted with *actual knowledge that he was violating the automatic stay or with reckless disregard of whether he was doing so.* In the Court's discretion, therefore, the Court declines to award any punitive damages for Findling's willful stay violation.

#### 3. Injunctive relief

Finally, the Debtor requested during the August 24 hearing, but not in her Motion, that this Court enjoin Findling from any further prosecution of his Criminal Contempt Motion, whether such prosecution would be a violation of the automatic stay or not. To the extent the continued prosecution of the Criminal Contempt Motion would not be a violation of the automatic stay, as described above, Debtor asks that the Court enjoin Findling from prosecuting the motion, based on this Court's authority under 11 U.S.C. § 105(a).[6]

 The Court will not grant any such injunctive relief at this time, for the following reasons. First, Debtor's Motion did not request any injunctive relief. Second, to the extent Debtor seeks an injunction against Findling based upon § 105(a), Debtor must do so by filing an adversary

---

**6.** Section 105(a) states, in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

proceeding, rather than seeking such relief by motion in a contested matter. *See* Fed. R.Bankr.P. 7001(7). Third, Debtor has not yet addressed the traditional factors that the Court must consider before entering a preliminary injunction based on § 105(a).[7] Fourth, a request that this court enjoin Findling from pursuing a state criminal prosecution, which does *not* implicate the § 362(a) automatic stay, raises complex and serious federalism issues, which Debtor has not addressed. *See, e.g., Barnette v. Evans*, 673 F.2d 1250, 1251–52 (11th Cir.1982) (reversing bankruptcy court's injunction against prosecution of bankruptcy debtor on criminal bad-check charges; discussing the application of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) in this context); *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178–79 (3rd Cir.1982) (same; affirming denial of injunction against criminal bad-check prosecution).

 To the extent Debtor seeks an order enjoining Findling from violating the automatic stay in the future, by continuing to prosecute the civil part of his Criminal Contempt Motion, such injunctive relief is unnecessary. The Court has now made clear to Findling that such conduct is prohibited by the automatic stay. As a practical matter, an injunction would add nothing to that already-existing prohibition, which Findling should now clearly understand. The Court presumes that Findling, an attorney who regularly practices in this Court, will not violate the automatic stay in the future. And if he does, the Court

could fully remedy such a violation after it occurs.

## IV. Conclusion

For the reasons stated in this opinion, the Court will grant Debtor's Motion in part, and deny it in part, by separate order.

---

7. Those preliminary injunction factors are:
 "(1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction." These are factors to be balanced, not prerequisites that must be met.
 *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir.2004) (citations omitted).