**IN RE: Nathanael M. THOMPSON, and Jennifer B. Thompson, Debtors.**

**Case No. 16–54628**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Signed January 9, 2017

---

Justin C. Albright, Rauser & Associates, Columbus, OH, for Debtors.

## OPINION AND ORDER DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for hearing on November 18, 2016 (the "Stay Hearing"), upon the Motion for Relief from the Automatic Stay (Doc. #29) (the "Motion"), filed by Natures Products, Inc. ("Creditor"), and the objection to the Motion (Doc. #35) (the "Objection") and supplemental memorandum thereto (Doc. #46) (the "Supplement"), filed by Nathanael M. Thompson and Jennifer B. Thompson (collectively, "Debtors"), on October 18, 2016, and November 14, 2016, respectively. Creditor filed a response (Doc. #50) to Debtors' Supplement on December 2, 2016.[1] Present at the Stay Hearing were Debtors, attorney Lucas Ruffing as counsel for Debtors, and attorney Ken Richards as counsel for Creditor.

Although couched as a motion for relief from stay, Creditor's Motion, in reality, seeks a determination that the automatic stay imposed by 11 U.S.C. § 362(a) does not prohibit Creditor from continuing its prosecution of a verified petition to adjudge Debtors guilty of indirect criminal contempt in Florida state court (the "Contempt Proceeding"). Creditor contends that the Contempt Proceeding is a criminal action or proceeding, within the meaning of 11 U.S.C. § 362(b)(1), and is excepted from the stay imposed by § 362(a). Debtors argue that criminal contempt is not a crime under Florida law, and that the circumstances of the Contempt Proceeding make it civil in nature. Accordingly, Debtors maintain that § 362(b)(1) is inapplicable to the Contempt Proceeding. For the reasons set forth below, the Court finds that Creditor's Motion must be denied.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02 entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

## I. Factual Background and Arguments of the Parties

Debtors Nathanael M. Thompson and Jennifer B. Thompson filed their petition for relief under Chapter 7 of the Bankruptcy Code on July 15, 2016 (the "Petition Date"). Creditor Natures Products, Inc. is a creditor of Debtors and the bankruptcy estate pursuant to a judgment (the "Judgment") entered against Debtors on October 6, 2016, in the Circuit Court of the 17th Judicial Circuit in Broward Country, Florida (the "State Court").[2] After entry of

---

1. Because the Supplement was filed only four (4) days prior to the Stay Hearing, the Court entered an order (Doc. #48) that, in part, allowed Creditor until December 2, 2016 to respond to the Supplement.

2. The Judgment was also against Debtors' co-defendant, Dr. Thompson's Inc. The Court will refer to the case in which the Judgment was entered as the "State Court Action."

the Judgment, Creditor took actions in accordance with Florida law in an effort to obtain information to aid in the collection of the Judgment, but, according to Creditor, Debtors failed to cooperate with such process. On February 19, 2016, the State Court, upon a motion to compel filed by Creditor, entered an order directing Debtors to complete and file Fact Information Sheets with respect to the Judgment.[3] What followed was at least two (2) hearings on at least two (2) separate motions seeking an order finding Debtors in contempt for failure to abide by orders issued by the State Court.

After a hearing held on March 29, 2016, the State Court ordered Debtors to serve amended responses to the Fact Information Sheets by April 4, 2016, and awarded Creditor attorney fees of $2,800.00 (the "March 29th Order"). After a hearing held on June 8, 2016, the State Court entered two (2) separate orders finding Debtors in contempt: The first order found Debtors to be in contempt of the March 29th Order for failure to pay the monetary sanctions for attorney's fees awarded to Creditor, and directed Debtors to remit payment within five (5) days of entry thereof. The second order—which was also based on Debtors' contempt of the March 29th Order—increased the award of attorney fees to Creditor to $3,600.00, and directed Debtors to produce to Creditor certain documents relating to their financial condition. None of the aforementioned orders issued by the State Court addressed the extent or egregiousness of Debtors' contemptuous conduct—other than Debtors' failure to pay an award of attorney fees in accordance with the March 29th Order— and Creditor offered no other evidence of

such at the Stay Hearing.[4] Creditor filed a verified petition to adjudge Debtors guilty of indirect criminal contempt in the State Court Action on June 28, 2016, thus initiating the Contempt Proceeding.

## II. Discussion

Under § 362(a)(1) of the Bankruptcy Code, a petition for bankruptcy relief operates as a stay "of the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case[.]" 11 U.S.C. § 362(a). Section 362(b)(1), however, excepts from the operation of subsection (a), "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b). Creditor asserts that the Contempt Proceeding falls within the purview of § 362(b), and thus, Creditor seeks an order permitting the Contempt Proceeding to continue.

■ Courts have utilized different approaches for determining whether a contempt proceeding is a "criminal action or proceeding" within the meaning of § 362(b)(1). At least one (1) court has interpreted § 362(b)(1) narrowly and opined that to fall within the exception, the criminal action or proceeding must be brought to enforce criminal law. *See In re Dervaes*, 81 B.R. 127, 129 (Bankr. S.D. Fla. 1987). The approach of what appears to be the majority of the courts is to "examine the circumstances surrounding the contempt [proceeding] to determine whether it is criminal or civil in nature." *In re Burgess*,

---

3. A Fact Information Sheet is Form 1.977 provided in the Florida Rules of Civil Procedure. It may be used as a form of discovery to aid in execution of a judgment. *See* Fla. R. Civ. P. 1.560.

4. The only evidence offered at the Stay Hearing by either party were the various orders entered in the State Court Action.

503 B.R. 154, 156 (Bankr. M.D. Fla. 2014) (citing *Rook v. Rook (In re Rook)*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)). The Court has not found, and the parties have not cited, any mandatory authority in this Circuit regarding the appropriate method of evaluating whether a particular proceeding falls within the meaning of § 362(b)(1); however, as discussed below, Creditor's Motion must be denied under either approach.

### A.   The *Dervaes* Opinion

Debtors urge the Court to apply the approach taken by the Court in *In re Dervaes*, 81 B.R. 127 (Bankr. S.D. Fla. 1987). In that case, the court addressed whether enforcement of a civil contempt order was excepted from the automatic stay pursuant to § 362(b)(1). The court defined "criminal action or proceeding" to be a proceeding "brought to enforce criminal law." *Id.* at 129. The court went on to define criminal law as "(a) a legislative enactment (b) applicable to at least a class (c) prohibiting specified conduct and (d) providing punishment by fine payable to, or imprisonment by, the state (e) upon the state's complaint." *Id.* The court then distinguished that definition from a contempt order:

> A contempt order on the other hand, is a judicial act to enforce a judicial directive or preserve the court's dignity. Typically the state is not a party in a contempt proceeding. It is applicable only to specified individuals. It involves no legislative determination. It resembles a criminal action only to the extent it employs the

sanction of either a fine or imprisonment. It is a civil procedure, not a criminal action or proceeding.

*Id.*

Although the court *Dervaes* addressed enforcement of a civil contempt order, the above description of a contempt order clearly encompasses the potential result of a criminal contempt proceeding.[5] The Contempt Proceeding at issue in the instant case falls squarely into that description: there is no evidence that the state is or will become a party to the Contempt Proceeding; the orders of the State Court that Creditors allege Debtors violated were only applicable to Debtors and Debtors' co-defendant in the State Court Action; and the obligations that Debtors allegedly failed to meet were imposed by court order, not the legislature. Moreover, case law and the committee notes to Rule 3.840 of the Florida Rules of Criminal Procedure—the rule that describes the procedures for prosecuting indirect criminal contempt—expressly state that criminal contempt under Florida law is not a crime. *See, e.g., Ballengee v. State*, 144 So.2d 68, 70 (Fla. Dist. Ct. App. 1962) ("The term 'criminal contempt' might be somewhat misleading because of the fact that a prosecution for criminal contempt is not in itself a criminal case but a proceeding inherent in the court. It is sui generis and is not, therefore, a crime."); Fla. R. Crim. P. 3.840 committee's note (a)(4) to 1968 adoption. Accordingly, because the Contempt Proceeding is not a proceeding to enforce a criminal law, application of the approach used by the court in *Dervaes* requires denial of Creditor's Motion.

---

5.   The court in *Dervaes* also expressly declined to follow "the holding in *Martin–Trigona v. Gouletas*, 15 B.R. 645 (N.D. Ill. 1980) that a bankruptcy filing does not automatically stay *criminal contempt* proceedings." *Dervaes*, 81

B.R. at 129 (emphasis in original). Thus, it appears that the court intended its ruling to apply to both civil and criminal contempt matters.

## B. The "Circumstances" Approach

The second approach requires a broader interpretation of the phrase "criminal action or proceeding," as used 11 U.S.C. § 362(b)(1). Courts utilizing this approach examine the purpose and circumstances of the contempt proceeding to determine whether it is criminal or civil in nature (as opposed to whether it was brought to enforce criminal law). *See In re Burgess*, 503 B.R. 154, 156 (Bankr. M.D. Fla. 2014). Generally, "the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) (citing *United States v. Mine Workers*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). "[T]he purpose of criminal contempt is punitive—'to vindicate the authority of the court.'" *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). A trial court's characterization of the contempt proceeding is not determinative of nature of the proceeding. *Id.* at 1401 (citing *In re Kave*, 760 F.2d 343, 351 (1st Cir. 1985)).

Although not a bankruptcy case, the Sixth Circuit Court of Appeals in *Bayshore* gave courts in this Circuit some guidance for determining whether sanctions for contempt are criminal or civil in nature. In its analysis, the Court noted that a monetary sanction and a sanction of incarceration could be either criminal or civil, depending on the circumstances. For a sanction of incarceration to be civil in nature, "the incarceration must be conditional." *Bayshore*, 934 F.2d at 1400. "That is, once the defendant performs the act required by the court, he must be released." *Id.* On the other hand, if the incarceration is for a definite period of time, "the relief is punitive, not remedial, and the contempt proceeding is, by definition,

criminal." *Roe v. Operation Rescue*, 919 F.2d 857, 869 (3d Cir. 1990).

A monetary sanction is civil if it is either of the following types of fines:

The first kind is payable to the complainant as compensation for damages caused by the contemnor's noncompliance. Such fine must of course be based upon evidence of complainant's actual loss....

The second kind of fine for contempt is payable to the court, but defendant can avoid paying the contempt 'fine' by performing the act required by the court's order.

*Bayshore*, 934 F.2d at 1400 (internal brackets, quotation marks, and citations omitted).

Creditor correctly points out that, because the State Court has not issued an order sanctioning Debtors in the Contempt Proceeding, the instant matter is factually distinguishable from many of the cases on this topic. Thus, Creditor posits that an order granting its Motion could direct the State Court to limit its sanctions to only those of the criminal nature. While the Court acknowledges that it is difficult to determine with certainty the nature of a contempt proceeding until the particular sanctions are actually imposed, Creditor— as the party requesting relief from the Court—bears the burden of demonstrating that the sanctions it seeks to have imposed are criminal in nature.

Similar to the instant matter, the court in *In re Storozhenko*, 459 B.R. 697 (Bankr. E.D. Mich. 2011), was tasked with determining whether a criminal contempt proceeding fell within the scope of 11 U.S.C. § 362(b)(1) prior to the state court actually issuing an order sanctioning the debtor. The debtor had allegedly violated certain orders issued by the state court prior to commencement of her bankruptcy case.

After commencement of the bankruptcy case, the receiver in the state court case filed a motion in state court seeking an order holding the debtor in criminal contempt for the alleged violations. The motion specifically requested that the court: (a) issue an order requiring the debtor to appear and show cause why she should not be held in criminal contempt; (b) order the debtor to pay the criminal fine of $7,500.00 pursuant to § 600.1715(1) of the Michigan Compiled Laws ("MCL"); (c) commit the debtor to jail to serve a sentence of ninety-three (93) days pursuant to MCL § 600.1715(1); and (d) order the debtor to pay criminal restitution in the amount of $46,862.08, together with the receiver's fees and costs incurred in the investigation and prosecution of the debtor's contempt. *Id.* at 700–01. The debtor filed a motion in her bankruptcy case alleging that the receiver, by filing the contempt motion, violated the automatic stay. The receiver contended that the contempt proceeding was excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(1).

In its analysis, the court examined each of the specific requests for relief under the principals set forth by the Sixth Circuit Court of Appeals in *Bayshore*. The court summarily found that the request that the debtor be held in criminal contempt was "clearly a contempt sanction." *Id.* at 704. With respect to the request for a criminal fine of $7,500.00, the court found such request to be criminal in nature, noting that the amount of the fine was set by statute,

and that the fine would be payable to the court, not the receiver. The court likewise found that the request that Debtor be sentenced to jail was a request for the imposition of a jail term for a definite period, and was thus punitive and criminal in nature. However, with respect to the requests for criminal restitution and for fees and costs associated with prosecution the contempt motion, the court found such requests to be of the civil nature. The court noted that the receiver's "request for his fees and costs incurred is obviously compensatory and remedial," and found the request for "criminal restitution" in the amount of $46,862.08 to be compensatory as well because "it [was] the exact amount alleged by [the receiver] to have been received and retained by the [d]ebtor in violation of the underlying state court orders." *Id.* at 705.

In contrast to *Storozhenko*, no evidence was presented to this Court at the Stay Hearing regarding the specific sanctions Creditor intends to seek in the Contempt Proceeding: neither party elicited any testimony from witnesses; the parties did not stipulate to any relevant facts; and Creditor did not offer into evidence its verified petition to adjudge Debtors guilty of indirect criminal contempt.[6] Thus, under the "circumstances" approach, the Motion must be denied due to Creditor's failure to introduce evidence sufficient to demonstrate that the circumstances surrounding the Contempt Proceeding make it criminal in nature.[7] As Creditor has not posited any

---

6. Although Creditor's verified petition to adjudge Debtors guilty of indirect criminal contempt was attached to the Motion, it was not introduced and admitted as evidence at the Stay Hearing, and thus, the Court cannot consider its contents.

7. Some courts additionally hold that, to be excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(1), a creditor's primary motive for pursuing criminal charges must

not be collection of a prepetition debt. Other courts have rejected this requirement, holding that once the proceeding is determined to be criminal in nature, the creditor's motives for pursuing the criminal charges are irrelevant. *See Storozhenko,* 459 B.R. at 705–06 (discussing the two (2) theories and holding that a creditor's motivation for pursing criminal sanctions are irrelevant). Nonetheless, as the Court has determined that Creditor has failed

other basis for granting relief from the automatic stay imposed by § 362(a), Creditor's Motion must be denied.

## III. Conclusion

For the foregoing reasons, the Court finds that Creditor has failed to demonstrate that it is entitled to the relief requested in the Motion. Therefore, it is

**ORDERED** that Creditor's Motion for Relief from the Automatic Stay (Doc. #29) is DENIED.

**IT IS SO ORDERED.**

to demonstrate that the Contempt Proceeding is criminal in nature, the Court need not address such issue.