RECOMMENDED FOR FULL-TEXT PUBLICATION
*File Name: 19b0002p.06*

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE:  LAWRENCE JAMES WOHLEBER, JR.,

*Debtor*.

_____

LAWRENCE JAMES WOHLEBER, JR.,

*Plaintiff-Appellant*,

*v*.

JENNIFER SKURKO; LESLIE A. GENTILE,

*Defendants-Appellees*.

No. 18-8008

On Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 14-11344—Jessica E. Price Smith, Judge.

Argued:  November 14, 2018

Decided and Filed:  March 4, 2019

Before: HARRISON, HUMPHREY, and OPPERMAN, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ARGUED:**  Antoinette E. Freeburg, FREEBURG LAW FIRM, L.P.A., Mayfield Village, Ohio, for Appellant.  Kenneth P. Frankel, SMITH & SMITH, Avon Lake, Ohio, for Appellee Skurko. Brian D. Sullivan, REMINGER CO., L.P.A., Cleveland, Ohio, for Appellee Gentile.  **ON BRIEF:**  Antoinette E. Freeburg, FREEBURG LAW FIRM, L.P.A., Mayfield Village, Ohio, for Appellant.  Kenneth P. Frankel, SMITH & SMITH, Avon Lake, Ohio, for Appellee Skurko. Brian D. Sullivan, James O'Connor, REMINGER CO., L.P.A., Cleveland, Ohio, for Appellee Gentile.

---

**OPINION**

---

GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. The debtor appellant, Lawrence J. Wohleber ("Wohleber"), is appealing an order of the bankruptcy court for the Northern District of Ohio dismissing his complaint seeking damages under 11 U.S.C. § 362(k) for violations of the automatic stay by his former wife, appellee Jennifer Skurko ("Skurko"), and her attorney, appellee Leslie Gentile ("Gentile"). The adversary complaint alleged that Skurko and Gentile violated the stay by allowing the post-petition sentencing portion of a pre-petition contempt proceeding to continue despite their knowledge that the automatic stay was in effect. At sentencing, Wohleber was ordered confined to jail until he paid a property settlement previously ordered by the domestic relations court. Ruling from the bench on a motion for judgment on partial evidence at the conclusion of Wohleber's case, the bankruptcy court found no violation of the automatic stay occurred because: a) the former wife and her counsel did not take affirmative action post-petition to try to collect the debt, such as trying to negotiate a settlement of the property settlement award; and b) there was no affirmative action they could take to prevent the domestic relations judge from jailing the debtor for nonpayment of the property settlement because the contempt motion was already ruled upon, and therefore could not be withdrawn, and all that was left was for the judge to "sentence" the debtor for his contempt of her order.

## I. ISSUES ON APPEAL

Wohleber framed his only issue on appeal as "[w]hether the Bankruptcy Court erred in granting Judgment in favor of Defendants Gentile and Skurko." To address Wohleber's single assignment of error, the panel will address two underlying issues:

1. Is the continuation of a contempt proceeding against a debtor a violation of the automatic stay when the contempt was found pre-petition, but the "sentencing hearing" at which the court ordered the debtor jailed for failure to pay a property settlement was post-petition, and the only condition to purge the contempt was to pay the property settlement?

2. Does a creditor and her legal counsel violate the automatic stay when they take no action to stop a state court from proceeding with a contempt hearing, the stated purpose of which is to confine the debtor to jail for failure to pay a dischargeable property settlement, and in failing to act to prevent the state court from sentencing the debtor to jail under such circumstances?

## II. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely filed to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right. 28 U.S.C. § 158(a)(1). For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949 (1988)) (internal quotation marks omitted). The order before the Panel grants a motion for a directed verdict to Skurko and Gentile and fully disposes of the adversary proceeding, making it a final order. *Geberegeorgis v. Gammarino* (*In re Geberegeorgis*), 310 B.R. 61, 63 (B.A.P. 6th Cir. 2004) (citing *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir. 1996)) ("[A]n order that concludes a particular adversarial matter within the larger case should be deemed final and reviewable in a bankruptcy setting.").

The Bankruptcy Court's decision was rendered as a judgment on partial evidence at the conclusion of Wohleber's presentation of evidence. Federal Rule of Bankruptcy Procedure 7052 makes Federal Rule of Civil Procedure 52 applicable to adversary proceedings. Rule 52(c) provides that in a bench trial, at the conclusion of a party's presentation of evidence, "the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue," but that judgment "must be supported by findings of fact and conclusions of law as required by Rule 52(a)." The judgment's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error. *Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 442 (6th Cir. 2005).

"Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home*

*Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Sols., Inc. v. Scripps Howard Broad. Co.* (*In re Mktg. & Creative Sols., Inc.*), 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006). "No deference is given to the trial court's conclusions of law." *Id.* A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192,196 (B.A.P. 6th Cir. 2014) (quoting *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation mark omitted)).

### III. FACTS

Since April 2004 Wohleber and Skurko have been involved in a protracted divorce and parentage proceeding. *See Wohleber v. Skurko*, Case No. 04DU063421, Common Pleas Court of Lorain County, Ohio, Domestic Relations Division. The state court granted their divorce and entered a property settlement in Skurko's favor in 2006. On October 11, 2012, after several appeals and a rehearing on remand, the state court ordered Wohleber to pay Skurko $36,459.33 for her share of the marital estate within 21 days (the "property settlement"). Over the next nine months the parties litigated and appealed several issues related to the property settlement. These issues were resolved by the state court in a hearing held on July 22, 2013 through which the court found Wohleber in contempt for failure to pay the property settlement, allowed him to purge his contempt by paying the property settlement in full by October 1, 2013, and set a sentencing hearing for October 8 in the event he did not pay the property settlement.

On October 4, 2013 Wohleber filed a Chapter 13 bankruptcy petition in the Northern District of Ohio, Bankruptcy case no. 13-17042, which fell between the October 1 deadline to purge his contempt[1] and the October 8 hearing to impose a sentence for contempt

---

[1]Despite the October 1 deadline, the transcript of the Sentencing Hearing indicates that the State Court never foreclosed Wohbler's opportunity to purge his contempt.

(the "sentencing hearing").[2] A suggestion of bankruptcy was filed in the divorce proceeding on the same day.

Before the sentencing hearing on October 8, Judge Debra L. Boros met with counsel in chambers. This chambers meeting was not recorded in any fashion. Later, on the record, the judge indicated she met with counsel in her chambers to give both parties the opportunity to explain why the sentencing hearing was stayed by the bankruptcy petition, despite her research concluding otherwise. She also gave the parties one last opportunity to negotiate a compromise to purge the contempt. In a short hearing, Judge Boros concluded that since the $36,458.33 had not been paid, nor a compromise reached, she had no choice but to sentence Wohleber to 30 days in jail. The relevant portion of the hearing is as follows:

> **The Court:** We're here for purposes of a sentencing. I did have an opportunity to speak with counsel prior to going forward and counsel took about 10 minutes to speak with each other and their clients. So how are we proceeding?
>
> **Mr. Lewis:** There is no resolution.
>
> **The Court:** Then we're here for purposes of sentencing. Has your client met his purged amount?
>
> **Mr. Lewis:** No.
>
> **The Court:** No.
>
> **Ms. Gentile:** That's correct, Your Honor.
>
> **The Court:** Then you leave me no choice but to sentence your client to 30 days to the Lorain County Jail, beginning today. We'll bring the sheriff's deputy up to transport.
>
> **Mr. Lewis:** A couple different things, Your Honor, I would like to put on the record and request from you, if we could please, at this time?
>
> **The Court:** And that would be what?
>
> **Mr. Lewis:** Well, for the record, I would like to just note to the Court that a suggestion of bankruptcy was filed by another attorney. That court case number was, I believe the Court has that information.

---

[2]This hearing was not a "sentencing hearing" at which the state court reviewed and applied sentencing guidelines, statutes, or other criteria for imposing a sentence upon a criminal defendant on account of a conviction. Rather, it was a hearing which the state court set to sentence Wohleber to jail for not paying the property settlement. Nevertheless, since the state court, the bankruptcy court, and the parties all refer to this hearing as the "sentencing hearing," we will also use this term.

**The Court:** I did. As a matter of fact, prior to going forward on the record, I brought both counsel back into my chambers. I indicated to counsel that I had researched the matter. That this Court, pursuant to the Ninth District Court of Appeals, the bankruptcy did not stay this particular proceeding. I offered to both counsel, including you, on behalf of your client, if there was any case law which you wished to present to me to read in the interim, before I took the bench to the contrary. None was provided. I've indicated what the law that the Court has found indicated.

So, although I appreciate you making the Court aware, I did receive a copy of that bankruptcy notice. And upon receiving it, the Court did its research to determine if, in fact, I was to continue this or not. And the Court's research indicated that we were to go forward and that there wasn't any stay in this proceeding. If there is any case law that you have, once again, I will say it on the record, that I said in chambers. And that was, if you have any case law to the contrary that you wish to provide to the Court at this time for purposes of my review, now would be the time.

**Mr. Lewis:** I understand that.

**The Court**: Do you have any case law?

**Mr. Lewis:** No, Your Honor, and I've indicated that in chambers. I want to bring it to the Court's attention and also place it on the record.

Secondly, Your Honor, we would like to make an oral motion for extension of time on this sentencing hearing for 30 days, in order to explore options of payment in another fashion.

**The Court:** And what I had indicated, when that was discussed amongst the attorneys, prior to going on the record, was, is that that was not for me to, I was not going to consider a continuance today, for the reason that both parties have had ample opportunity, being before this Court previously, to work out some arrangements. And quite honestly, that, in my impression, it has become very difficult, not only for the parties to communicate with each other, but for counsel to communicate with each other.

However, in a last ditch effort to get counsel to communicate with each other and the parties to communicate with each other, I gave additional time and indicated that whatever agreement the parties reached, that I would be happy to accept. However, if there wasn't an agreement reached, that I was going to go forward, because, at the very least, everybody deserves some finality to this.

So, I appreciate your argument on the record, but I had indicated to both counsel that it became very apparent in the hearing, in the status in my chambers, that counsel, neither were very receptive to speaking with each other regarding settlement, however, I felt it important to give you some additional 10 or 15 minutes to do that, outside of being in my chambers, but it appears that was for naught as well.

(Sentencing Hr'g Tr. 2:11–5:17.)**3**   The journal entry memorializing the result of the hearing stated that Wohleber's confinement remained contingent on purging the contempt.

The parties also stipulated that Wohleber's jail sentence included "a provision that he be released upon payment of the property settlement which is the basis for the contempt." (Joint Stipulation ¶ 6, Adv. P. 16-01106 ECF No. 122.) Wohleber spent the next 10 days in jail. Four days into his confinement, Wohleber's attorney filed an emergency motion to vacate his sentence. But because the motion was not filed in person, a same-day emergency hearing on the motion could not be held. A hearing on the motion to vacate was scheduled for the following week. On October 17 Wohleber was released by agreement of the parties and his contempt was held in abeyance until the completion of his bankruptcy.

> BY AGREEMENT OF THE PARTIES, THE REMAINDER OF PLTFS SENTENCE IMPOSED ON 10-8-13, AS A RESULT OF HIS FAILURE TO PURGE HIS CONTEMPT AS PREVIOUSLY ORDERED IS HEREBY HELD IN ABEYANCE PENDING RESOLUTION OF THE RELEVANT ISSUES IN PLTF'S CURRENTLY PENDING BANKRUPTCY MATTER. IT IS THEREFORE HEREBY ORDERED THAT PLTF BE IMMEDIATELY RELEASED FROM THE LORAIN COUNTY JAIL.

(Divorce Proceeding Docket 26, October 17, 2013.)**4**   There were no further hearings regarding his release.

After his release, Wohleber dismissed his bankruptcy case, later testifying that that he did so because he lost confidence in his attorney. Following the dismissal of the bankruptcy, Skurko filed a motion to reimpose the contempt sentence. On March 10, 2014 Wohleber filed a second bankruptcy case in which the underlying adversary proceeding was filed and the next day the divorce proceeding was again stayed pending the resolution of the second bankruptcy case.

---

**3**Defendant-Appellee Gentile filed a copy of this transcript as exhibit A-2 to her motion for summary judgment. (Mot. for Summary Judgment, Adv. P. 16-01106 ECF No. 84-3.) It will be cited as "Sentencing Hr'g Tr." in this opinion.

**4**Wohleber filed a copy of the docket in his Divorce/Parentage case in Court of Common Pleas for Lorain County, Case No. 04DU063421, as exhibit A-1 to his motion for summary judgment. (Mot. for Summary Judgment, Adv. P. 16-01106 ECF No. 87-2.) It will be cited as "Divorce Proceeding Docket". in this opinion.

## IV. PROCEDURAL HISTORY

Nearly three years after his confinement, Wohleber initiated the adversary proceeding from which this appeal is taken. *Wohleber v. Skurko*, Adv. No. 16-01106 (the "Adversary Proceeding").[5] The complaint alleged violations of the automatic stay by Skurko, Gentile,[6] and Judge Boros. Judge Boros successfully moved for dismissal of all claims against her under a claim of judicial immunity.[7] Skurko and Gentile also moved to dismiss the claims against them, arguing that the court lacked jurisdiction to hear the stay violation claims because the alleged violations occurred in the first bankruptcy, and therefore the claims must proceed in that case. The bankruptcy court denied those motions.[8]

Skurko, Gentile, and Wohleber each moved for summary judgment and a hearing was held on those motions on November 8, 2017. The bankruptcy court denied all three motions for summary judgment. In each order, the bankruptcy court stated that it had provided its reasoning on the record on November 8, 2017. The transcript for that hearing does not appear in the record, nor on the adversary docket.

Prior to trial, the parties stipulated to the general timeline of events and the contingent nature of Wohleber's jail sentence. The court bifurcated the liability and damage portions of the trial, with the trial proceeding first on the issue of liability and evidence then to be taken on damages only if Wohleber prevailed in establishing Skurko's and Gentile's liability. The parties

---

[5]There does not appear to be anything in the record explaining the three-year delay in filing the adversary proceeding.

[6]Attorneys may be held liable for violations of the automatic stay as a result of actions they have taken or omissions they have made in representation of their clients. *In re Timbs*, 178 B.R. 989, 995 (Bankr. E.D. Tenn. 1994); *In re McGinty*, 119 B.R. 290, 296 (Bankr. M.D. Fla. 1990) (attorney violated stay by seeking additional spousal support for client after receiving notice of bankruptcy).

[7]The state judge also argued that the bankruptcy court lacked jurisdiction over the adversary proceeding under the *Rooker-Feldman* doctrine, particularly as expressed by *Singleton v. Fifth Third Bank* (*In re Singleton*), 230 B.R. 533 (6th Cir. B.A.P. 1999); however, the bankruptcy court did not address that argument.

[8]The bankruptcy court's determination of this issue is consistent with other cases which have held that the stay violation may be pursued in the subsequent bankruptcy case and the prior case need not be reopened for that purpose. *See In re Braught*, 307 B.R. 399, 401 (Bankr. S.D.N.Y. 2004); *In re Prine*, 222 B.R. 610, 612 (Bankr. N.D. Iowa 1997); and *D'Alfonso v. A.R.E.I. Invest. Corp.* (*In re D'Alfonso*), 211 B.R. 508, 513 (E.D. Pa. 1997).

entered two exhibits into evidence, the docket of the divorce proceeding and the transcript of the sentencing hearing.  Wohleber was the only witness to testify.

Immediately after the conclusion of Wohleber's case on liability, Gentile moved for judgment on partial evidence.[9]  Her main argument was that in other bankruptcy cases when the petition date fell between a finding of contempt and sentencing on the contempt, the sentencing was deemed an act of the court and the creditor was determined to have no duty to take steps to attempt to prevent the enforcement of the contempt order.

After a short recess, the bankruptcy court ruled from the bench.  The bankruptcy court's findings of fact and conclusions of law were organized around three inquiries: 1) whether a stay violation occurred, 2) whether Skurko and Gentile affirmatively violated the stay, and 3) whether Skurko and Gentile had a duty to stop the sentencing hearing from proceeding.  The court considered three periods when a stay violation could have occurred: between the petition date and the sentencing hearing, at the time of Wohleber's release from jail, and the period between those dates.

Looking first at the time period between the filing of Wohleber's first bankruptcy and the sentencing hearing, the bankruptcy court held that neither Skurko nor Gentile "attempted to engage in settlement discussions with Mr. Wohleber in order to resolve the issue of the payment [of] the $36,000 property settlement . . ."  (Tr. of March 21, 2018 Hr'g ("Tr.") 44:12–15, Adv. No. 16-01106 ECF No. 154.)  Because Skurko and Gentile made no attempt to negotiate with Wohleber, "their actions were not an attempt to collect payment. They were not attempting to negotiate.  They were not trying to settle the matter.  From what has been presented, they were silent on receiving or attempting to collect or receive payment." (Tr. 44:17–21.)  The bankruptcy court noted that an "attempt to negotiate could have constituted a violation of the automatic stay, but there is no evidence that that happened, either in the testimony today or in the documents." (Tr. 45:20–23.)

---

[9]Gentile distributed a written motion to the parties, which does not appear in the record nor on the adversary proceeding docket.

Looking at whether the agreed order releasing Wohleber from confinement constituted a stay violation, the court found that the journal entry "indicates that the parties agreed to hold the sentence to purge contempt in abeyance in order to resolve pending bankruptcy issues." (Tr. 47:2–5.)  The court concluded that the order then "was not a resolution of the contempt, i.e., payment of the settlement or negotiation of the settlement, or determination of a sum certain, in order for him to get out, but rather the parties agreed to address that issue in the context of the bankruptcy." (Tr. 47:7–12.)  Therefore, the bankruptcy court held that there was neither Skurko nor Gentile "affirmatively attempted to collect the debt . . . ." (Tr. 48:4–5.)

Having found no evidence that Skurko or Gentile "affirmatively attempted to collect the debt," the bankruptcy court then turned to the question of whether their inaction constituted a stay violation, i.e. "whether or not they had an affirmative duty to stop . . . what they put in motion.  And the issue then is whether or not they actually had the ability to stop or if what was happening was what they put in motion."  (Tr. 44:23–45:1.)  Without any analysis, the bankruptcy court appears to have implicitly made a finding that the contempt sentence was a stay violation and moved directly to the next question, "was there a point in time where there were actions that the Defendants could have or should have taken that would have alerted the Judge to the fact that this action was a violation of the automatic stay or that they didn't want to proceed." (Tr. 49:6–11.)

Wohleber argued that Skurko and Gentile should have withdrawn Skurko's contempt motion.  However, the bankruptcy court rejected this argument finding the court was acting on its own order and so there was no motion that could have been withdrawn to stop the sentencing hearing from proceeding.  The bankruptcy court went on to consider if there was anything else that could have been done by Skurko and Gentile.

> Short of at that hearing stating that they were waiving the obligation, I can't see what else could have been done here. The Judge acknowledged the stay was in place.  The Judge acknowledged that she had researched the issue of the stay and found that she did not believe that it was applicable in this instance.
>
> The attorney for the Debtor spoke out.  The Judge was fully aware of this issue.  There is no requirement to waive your claim in order to protect yourself from being alleged to have violated the automatic stay.  Similarly, as I indicated earlier, the transcript reflects that the counsel for the Defendant, who is also now a

Defendant, was not engaging in negotiations that and with respect to the release which occurred on October 17th, that was a release to address the payment and bankruptcy issues at a later point in time, not a resolution of that claim. And so there was no action there either.[10]

(Tr. 49:12–50:4.) With that, the bankruptcy court found that:

the plaintiff has not met their burden in demonstrating that there was a violation of the automatic stay, either affirmatively in attempting to collect, or in failing to stop proceedings to collect a debt, because what was happening here was after a determination of contempt had been found, the court was entering a sentence consistent with that order, notwithstanding the statement of the parties that the bankruptcy stay was in effect.

(Tr. 50:14–23.) Because the bankruptcy court did not find sufficient evidence that Skurko and Gentile violated the stay, the motion for judgment on the partial evidence was granted and the court did not receive evidence from Skurko and Gentile on liability, nor take evidence on damages.

## V. DISCUSSION

### A. Jurisdiction—the *Rooker-Feldman* Doctrine Does Not Preclude the Bankruptcy Court from Considering Whether a Stay Violation Occurred

Before she was dismissed from the case, Judge Boros argued that the *Rooker-Feldman* doctrine divested the bankruptcy court of jurisdiction to review her decision. Specifically, she argued that under *Singleton v. Fifth Third Bank* (*In re Singleton*) a state court determination that the automatic stay does not apply to its proceeding divests bankruptcy courts of jurisdiction to hear a stay violation claim arising out of the same matter. 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999).

Though neither remaining party has argued that *Rooker-Feldman* deprives the bankruptcy court of jurisdiction to enforce the automatic stay, "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review'. . . ." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct.

---

[10]The bankruptcy court did not explain why the October 17 agreement to deal with the payment terms through the bankruptcy was not something "else [that] could have been done" to prevent Wohleber's confinement.

1326, 1331 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S. Ct. 162, 165 (1934)). When a court lacks jurisdiction, the appellate court has "jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Corrick*, 298 U.S. 435, 440, 56 S. Ct. 829, 832 (1936). The bankruptcy court did not address this issue before dismissing Judge Boros from the case. In order satisfy our duty to confirm the jurisdiction of the bankruptcy court and the extent of our jurisdiction, we will address the issue now.

The *Rooker-Feldman* doctrine—derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923), and revived after 60 years of disuse by *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983)—"generally provides that lower federal courts may not engage in appellate review of state-court decisions." *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC* (*In re Isaacs*), 895 F.3d 904, 912 (6th Cir. 2018) (citing *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013)). "[T]he *Rooker-Feldman* doctrine has been applied by [the] Court only twice, i.e., only in the two cases from which the doctrine takes its name . . . ." *Skinner v. Switzer*, 562 U.S. 521, 531, 131 S. Ct. 1289, 1297 (2011). Despite this, the Court has since noted that "lower federal courts have variously interpreted the *Rooker-Feldman* doctrine to extend far beyond the contours of the *Rooker* and *Feldman* cases," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283, 125 S. Ct. 1517, 1521 (2005). Consequently, the Court has frequently returned to this issue to reiterate the narrow scope of the doctrine. *Id.*; *Lance v. Dennis*, 546 U.S. 459, 126 S. Ct. 1198 (2006); *Skinner*, 562 U.S. at 531.

*Singleton* was decided prior to *Exxon*. *Exxon* and its progeny clarified that the doctrine does not incorporate preclusion law. "When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court[,]" *Exxon*, 544 U.S. at 292, because neither of the parent cases "supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id.* In this situation, *Exxon* found that "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293. The Court further explained that even without concurrent proceedings, such as when "a party attempts to litigate in federal court a matter previously litigated in state

court[,]" *Rooker-Feldman* does not apply when the plaintiff in federal court "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . ." *Id.*

Because the state court and bankruptcy proceedings are proceeding in parallel, *Rooker-Feldman* does not apply, and the bankruptcy court has jurisdiction to adjudicate the stay violation claim.[11]

### B. Proceeding with the Sentencing Hearing and Confining Wohleber Violated the Automatic Stay

*1. The Automatic Stay*

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under this title . . ." § 362(a)(1). As frequently noted:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Fed. Land Bank of Louisville v. Glenn* (*In re Glenn*), 760 F.2d 1428, 1435 (6th Cir. 1985) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6296–97); *United States v. Robinson* (*In re Robinson*), 764 F.3d 554,

---

[11]Skurko and Gentile have not argued that the adversary proceeding was barred by issue or claim preclusion and, therefore, the panel will not address that issue. Res judicata, at least in the Sixth Circuit, incorporates both issue and claim preclusion, and is an affirmative defense that is generally waived if not raised. *See Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999); and *Lattanzio v. Ackerman*, 682 F. Supp. 2d 781, 787 (E.D. Ky. 2010) (res judicata incorporates issue preclusion and claim preclusion); and Federal Rule of Bankruptcy Procedure 7008, incorporating Federal Rule of Civil Procedure 8, providing under Rule 8(c) that res judicata is an affirmative defense. Further, as an affirmative defense, it is not jurisdictional like the *Rooker-Feldman* doctrine. *See Hutcherson v. Lauderdale County*, 326 F.3d 747, 755 (6th Cir. 2003) ("*Rooker-Feldman* should be considered first since its application strips federal courts of jurisdiction and the ability to hear a res judicata, or other affirmative defense." (citations omitted)); *Neff v. Flagstar Bank, FSB*, 520 F. App'x. 323, 326 (6th Cir. 2014) ("Unlike res judicata, the conceptually related *Rooker-Feldman* doctrine *is* jurisdictional and therefore may properly be raised by the court sua sponte."); and *Whittaker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 923 (N.D. Ohio 2009) ("Res judicata is an affirmative defense and not jurisdictional.").

558 (6th Cir. 2014). However, not only does it provide those important safeguards to debtors like Wohleber, but it also serves to protect creditors:

> The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment. The stay of pre-petition proceedings enables the bankruptcy court to decide whether it will exercise its power under § 502(b) of the Bankruptcy Code to establish the validity and amount of claims against the debtor or allow another court to do so. . . ." *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (footnotes omitted). The stay helps "preserve what remains of the debtor's insolvent estate and . . . provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir. 1982).

*Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001).

Like all general rules, there are exceptions to the automatic stay. "[T]he automatic stay protection does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions." *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012) (citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir.1986)). When the automatic stay is implicated two determinations are necessary: a) first, is the matter something which would be stayed absent an exception to the stay; and b) if the matter would be stayed, does an exception under § 362(b) or other applicable law apply?

### 2. The Collection of the Property Settlement Was Stayed by the Automatic Stay

A property division awarded in a domestic relations case prior to the filing of a bankruptcy petition is a debt of the debtor. *Towne v. Towne* (*In re Towne*), Adv. No. 08–5106, 2009 Bankr. LEXIS 278, at *5 (Bankr. D. Kan. Feb. 3, 2009); *Cantor v. Lever* (*In re Lever*), 137 B.R. 243, 246 (Bankr. N.D. Ohio 1992); 11 U.S.C. § 101(5) & (12). Thus, absent an applicable exception to the automatic stay, the commencement or continuation of a proceeding to collect a property division award of a domestic relations court is stayed. *See In re Jones*, 556 B.R. 219, 223 (Bankr. E.D.N.C. 2016) ("the only exceptions to the stay with regard to collection [of domestic relation debts] involve domestic support obligations."); and *In re Coats*, 509 B.R. 836, 841 (Bankr. W.D. Mich. 2014) ("nothing in that exception authorizes any entity to 'determine the division of property that is property of the estate' or provide for the collection of

any claim . . . that does not fall within the federal definition of 'domestic support obligation.'"). Skurko and Gentile agree that this matter involves a property division debt and have not asserted that an exception relating to a domestic support obligation under § 362(b)(2) applies.  In a Chapter 7 bankruptcy case, such a debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(15). *Floyd v. Floyd* (*In re Floyd*), Adv. P. No. 17–80043, 2017 Bankr. LEXIS 3266, at *9 (Bankr. N.D. Ala. Sept. 27, 2017).  However, by virtue of 11 U.S.C. § 1328(a)(2), such a debt is dischargeable in a Chapter 13 case, assuming the debtor successfully completes the payments under his Chapter 13 plan or obtains a "hardship" discharge under § 1328(b). *Id. at *9–10.*  Such a debt may be provided for and paid and discharged through a Chapter 13 debtor's payment plan. *Coon v. Henderson* (*In re Coon*), 522 B.R. 357, 361 (Bankr. M.D. Ala. 2014) (Under Chapter 13 of the Bankruptcy Code "debts owing to a former spouse that are not domestic support obligations . . . are dischargeable under § 1328(a)(2).").

### 3. The Sentencing Hearing and Wohleber's Confinement Is Not Excepted From the Automatic Stay

The issue then becomes, was the sentencing hearing on October 8, 2013 and Wohleber's confinement through that hearing excepted from the stay under an exception provided by § 362(b) or under other applicable law?  The state court did not provide on the record, in a decision, or in an order the exception to the automatic stay which permitted it to proceed with the sentencing hearing.[12]  Skurko and Gentile have suggested that the state court applied either

---

[12]The closest the state court came to offering legal support for the determination that the sentencing hearing was not stayed is this statement: "I indicated to counsel that I had researched the matter.  That this Court, pursuant to the Ninth District Court of Appeals, the bankruptcy did not stay this particular proceeding." (Sentencing Hr'g Tr. 2.)  The state court did not provide any reference to the case to which she was referring.  Nor has Skurko and Gentile provided such information.  The only Ohio Ninth District Court of Appeals cases which the Panel found which appeared relevant were *Davenport v. Davenport*, C.A. NO. 11713, 1984 Ohio App. LEXIS 12239 (Ohio Ct. App. Dec. 5, 1984) and *Humiston v. Humiston*, No. 04CA0076-M, 2005 Ohio App. LEXIS 3963 (Ohio Ct. App. Aug. 24, 2005).  In *Davenport* the state domestic relations court proceeded with a contempt hearing despite the respondent's contention that she had filed bankruptcy.  In affirming the domestic relations court, the state court of appeals held that "[i]n the absence of proof that a petition had been filed in bankruptcy, the lower court was correct in proceeding with the case."  The court noted that "[t]he record does not contain a copy of Betty's petition in bankruptcy or any other evidence to substantiate her claim that she filed such a petition." *Davenport*, 1984 Ohio App. LEXIS 12239, at *3–5.  However, in this case, Wohleber's counsel filed a notice or suggestion of bankruptcy and there was no dispute with the parties, nor doubt raised by the state court, that Wohleber filed a bankruptcy case. The state court did not indicate, at least on the record, that she was proceeding because Wohleber did not provide adequate evidence that he filed bankruptcy.  Nevertheless, as discussed below, under such circumstances the court and counsel proceed at their own risk in the event a stay violation is later found to have been committed.

§ 362(b)(1)'s exception for a "criminal action or proceeding against the debtor" or a court-made exception for contempt orders intended to "preserve the dignity of the court." *Dominic's*, 683 F.3d at 760–61. However, neither of those exceptions are applicable.

Section 362(b)(1) provides that the filing of a bankruptcy petition "does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor . . . ." However, there does not appear to be "any mandatory authority in this Circuit regarding the appropriate method of evaluating whether a particular proceeding falls within the meaning of § 362(b)(1)." *In re Thompson*, 562 B.R. 907, 911 (Bankr. S.D. Ohio 2017).

*Thompson* identified two tests to determine whether a proceeding falls within the exception for criminal actions provided by § 362(b)(1): a narrow test—the "proceeding must be brought to enforce criminal law," *Id.* at 910 (citing *In re Dervaes*, 81 B.R. 127, 129 (Bankr. S.D. Fla. 1987))—and a broad test applied by the majority of courts—"the circumstances surrounding the contempt [proceeding] . . . determine whether it is criminal or civil in nature." *Id.* (citing *In re Burgess*, 503 B.R. 154, 156 (Bankr. M.D. Fla. 2014)). Section 362(b)(1) does not except the sentencing hearing from the stay under either test.

The narrow *Dervaes* test only applies § 362(b)(1)'s exception to proceedings "brought to enforce criminal law." It defines criminal law as "(a) a legislative enactment (b) applicable to at least a class (c) prohibiting specified conduct and (d) providing punishment by fine payable to, or imprisonment by, the state (e) upon the state's complaint." *Thompson*, 562 B.R. at 911 (quoting *Dervaes*, 81 B.R. at 129). *Thompson* and *Dervaes* both distinguished this definition from a criminal or civil contempt proceeding:

> A contempt order on the other hand, is a judicial act to enforce a judicial directive or preserve the court's dignity. Typically the state is not a party in a contempt proceeding. It is applicable only to specified individuals. It involves no legislative determination. It resembles a criminal action only to the extent it employs the sanction of either a fine or imprisonment. It is a civil procedure, not a criminal action or proceeding.

---

In *Humiston*, the domestic relations court stayed its proceedings in response to the debtor's bankruptcy filing and only proceeded after the bankruptcy case concluded and the debtor received his discharge.

*Id.* (quoting *Dervaes*, 81 B.R. at 129). Similarly, the sentencing hearing would fail to meet the requirements of the narrow *Dervaes* test.

Under the broader test, civil contempt proceedings are subject to the automatic stay, while criminal contempt proceedings are not, and courts may look beyond the label applied to the contempt proceeding to "the circumstances surrounding the contempt [proceeding] to determine whether it is criminal or civil in nature." *Burgess*, 503 B.R. at 156 (footnote omitted).

The contempt order required Woehbler to pay the property settlement previously ordered by the state court. The contempt order does not contemplate a monetary penalty beyond compliance with the property settlement and only threatened confinement subject to immediate release upon compliance with the contempt order. The rule regarding whether such a sanction is civil or criminal in nature is simple: "any [prison] sentence 'must be viewed as remedial,' and hence civil in nature, 'if the court conditions release upon the contemnor's willingness to [comply with the order].' By the same token, in a civil proceeding the court 'may also impose a determinate sentence *which includes a purge clause*.'" *Hicks v. Feiock*, 485 U.S. 624, 634, 108 S. Ct. 1423, 1431 (1988) (second alteration in original) (citations omitted) (quoting *Shillitani v. United States*, 384 U.S. 364, 370, 360 n.6, 86 S. Ct. 1531, 1536, 1637 n.6 (1966); *see also United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991) ("As used in the civil context, however, incarceration must be conditional. That is, once the defendant performs the act required by the court, he must be released."). *See also Moore v. Nunnari (In re Moore)*, Adv. No. 08–1139, 2009 Bankr. LEXIS 4544, at *11 (Bankr. N.D. Ohio March 20, 2009) (internal quotation mark omitted) ("[T]he order of contempt appears to be civil in nature, in that the debtor may purge himself of contempt by paying in full, the total arrearage for the spousal support and child support . . . ."). Since Wohleber's contempt could be purged at any time, the contempt proceeding was civil in nature and subject to the automatic stay.

Skurko and Gentile cite *Rook v. Rook (In re Rook)* to argue that the contempt order was converted into a criminal contempt order when the date the court set to purge the contempt passed, one week before the sentencing hearing. 102 B.R. 490, 494 (Bankr. E.D. Va. 1989), *aff'd*, 929 F.2d 694 (4th Cir. 1991). However, *Rook* recognized the distinction between civil

contempt and criminal contempt which the Supreme Court described in *Hicks* and the Sixth Circuit applied in *Bayshore Assocs.* and therefore does not change our analysis.

In *Rook*, the state court entered two contempt orders: the first was entered pre-petition, and found Rook in contempt of a prior order, prescribed a jail term, suspended the jail term pending payment of all sums due, and gave Rook 60 days to comply with the order or punishment would be determined by the court. The second order was entered post-petition six years later and could not be purged because the debtor "had the power to comply with [the pre-petition contempt order] and the Property Settlement Agreement, and that he failed to do so and should be punished accordingly." *Id.*

The *Rook* court held that because the pre-petition contempt order could be purged at any time, it "must be construed as an attempt to exact certain behavior from the debtor, specifically the payment of sums due his former spouse, to which the stay would have applied to prevent the coerced dilution of the estate." *Id.* at 494. However, because the second order, the post-petition order, did not allow the debtor to purge his contempt, the court found that order was calculated to punish the debtor for non-compliance, rather than coerce compliance and therefore was not subject to the automatic stay. *Id.* at 494–95.

In this appeal, the state court allowed Wohleber to purge his contempt any time before or after the sentencing hearing. Nothing in the record established that the court was punishing Wohleber, nor terminated his ability to purge his contempt by paying the property settlement. Thus, the contempt proceeding was civil in nature and merely an attempt to coerce Wohleber to make a payment to Skurko, and was not calculated to punish Wohleber for failing to comply with the contempt order. Therefore, the contempt proceeding was not excepted from the automatic stay by § 362(b)(1).

In addition to the 28 exceptions to the automatic stay codified in § 362(b), the Sixth Circuit has found some court-made exceptions to the stay.

> The automatic bankruptcy stay "protects interests in a debtor's property, not tortious uses of that property by the debtor." *Larami Ltd. v. Yes! Entm't Corp.,* 244 B.R. 56, 60 (D.N.J. 2000) (quotation and citation omitted). The automatic stay provision "was intended to prevent interference with a bankruptcy

court's orderly disposition of the property of the estate, it was not intended to preclude post-petition suits to enjoin unlawful conduct. If this section were read to prevent the injunctive relief [against mark infringement] sought here, bankrupt businesses which operated post-petition could violate [plaintiffs'] rights with impunity." *Id.*; *see also Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("[T]he statutory stay of proceedings as to [defendant] did not free [defendant] of the contempt orders and the injunctions upon which the contempt was based, all of which were entered before [defendant] suggested bankruptcy.").

> Put another way:

> It is within a court's inherent power to take whatever steps [are] necessary to ensure those persons within its power comply with its orders. [We] cannot conceive that Congress intended to strip [a] court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless.

*Dominic's*, 683 F.3d 757, 760–61 (alterations in original) (quoting *Rook*, 102 B.R. at 493). In *Dominic's*, the district court and the Sixth Circuit found that the automatic stay did not preclude the district court from continuing with a contempt proceeding and enjoining the defendant debtor from tortiously using his restaurant to infringe the plaintiff's trademarks. Thus, despite the lack of an applicable statutory exception, the courts held that the automatic stay was not so broad as to preclude a court from proceeding under those circumstances.

In this case, Skurko and Gentile argue that a court-made exception concerning the upholding of the dignity of the court applied to the sentencing hearing. Thus, they argue that "Judge Boros's order was designed to uphold the dignity of the court." (Br. of Def.-Appellee Gentile ("Gentile Br.") 14, BAP Case No. 18-8008 ECF No. 15. *See also* Br. of Def.-Appellee Skurko ("Skurko Br.") 12–13, BAP Case No. 18-8008 ECF No. 13.) However, nowhere in the record is there any evidence that the purpose of the confinement was to uphold the court's dignity. Rather, the evidence points to the fact that the purpose of the sentencing hearing and Wohleber's confinement was to coerce him into paying the property settlement. As noted in the factual description, at the commencement of the sentencing hearing the state court inquired whether there was any resolution between the parties as to the property settlement and upon being advised that no settlement had been reached, she advised the parties that she had no choice

but to proceed with sentencing Wohleber to jail. (*See* Sentencing Hr'g Tr. 2:24–3:2.) Later the court denied a request from Wohleber's counsel to continue the matter "in order to explore options of payment in another fashion." (Sentencing Hr'g Tr. 4:16–17.) In rejecting this request, the court stated "I was not going to consider a continuance today, for the reason that both parties have had ample opportunity, being before this court previously, to work out some arrangements . . . ." (Sentencing Hr'g Tr. 4:21–24.) Thus, the only "indignity" or transgression Wohleber was accused of was not paying the property settlement or not otherwise reaching a settlement with Skurko.

Given the existence of the court-made exceptions, we must determine the extent of such court-made exceptions. The Sixth Circuit has consistently held that "[t]he court in which the judicial proceeding is pending . . . has jurisdiction to decide whether the proceeding is subject to the stay." *Dominic's*, 683 F.3d. at 760 (citing *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986)), but, when the stay would otherwise apply, bankruptcy courts have the exclusive jurisdiction to grant relief from the stay. *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983) ("The legislative history of § 362(d) unambiguously identifies the *bankruptcy* court as the exclusive authority to grant relief from the stay."); *cf. Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir. 2001) ("[I]f the stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court."). However, even the broadest reading of the *Dominic's* exception, or any exception to permit a court to protect its integrity, would not allow a state court to except itself from the stay to enforce a dischargeable money judgment against an eligible debtor. Such an exception would swallow the rule and would transform the automatic stay from an injunction staying the commencement and continuation of judicial proceedings against a debtor, to a discretionary standard incapable of being strictly enforced. And, of course, confinement of a debtor solely for failing to pay a dischargeable money judgment is nothing short of the use of debtor's prison. Accordingly, the Panel finds that proceeding with the sentencing hearing and confinement of Wohleber did not meet a court-made exception to the automatic stay.

For these reasons, the Panel finds that the sentencing hearing was a continuation of a judicial proceeding against the debtor to recover a pre-petition debt of the debtor and further, that

no statutory or court-made exceptions apply. Therefore, the sentencing hearing and confinement of Wohleber were stay violations. The panel now turns to the issue of whether Skurko and Gentile are liable for these violations.

### C. Skurko and Gentile Had a Duty to Take Action to Prevent the Sentencing Hearing and Wohleber's confinement from Occurring

As a general matter, the responsibility to enforce the automatic stay is placed on creditors because "[t]o place the onus on the debtor, . . . to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory." *Ledford v. Tiedge* (*In re Sams*), 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (alterations in original) (quoting *Miller v. Sav. Bank of Balt.* (*In re Miller*), 22 B.R. 479, 481 (D. Md. 1982)) (internal quotation marks omitted).

> [It is] incumbent upon creditors to take the necessary steps to halt or reverse any pending State Court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages, repossession of automobile, foreclosure of a mortgage or a judgment lien and, thereby, maintain, or restore, the status quo as it existed at the time of the filing of the bankruptcy petition.

*In re Webb*, 472 B.R. 665 (B.A.P. 6th Cir. 2012) (alteration in original) (quoting *In re Banks*, 253 B.R. 25, 30 (Bankr. E.D. Mich. 2000)).

Skurko and Gentile are attempting to flip the burden imposed upon creditors to enforce the automatic stay on its head. Upon being advised of the bankruptcy filing by Wohleber's divorce counsel at the sentencing hearing, the state court advised counsel at the sentencing hearing that she researched the issue of the stay and concluded that she could proceed. She invited counsel to provide her with case law to the contrary and particularly placed the onus on Wohleber's divorce counsel to come up with such case law. There is nothing in the record to suggest that Skurko and Gentile tried to convince the state court that it should not proceed with the sentencing hearing and Wohleber's confinement. Relying on Judge Boros' statements made at the sentencing hearing, Skurko and Gentile now argue that Wohleber's divorce counsel had the burden of convincing Judge Boros not to proceed, and is to blame for not convincing her:

Simply stated, Ms. Gentile had no duty to prevent the domestic relations court from seeking to enforce violation of its prior contempt order. In fact, the evidence demonstrated that Judge Boros was responsible for proceeding with the sentencing . . . Further, Judge Boros gave Mr. Wohleber's counsel the opportunity to present any law contrary to her decision to proceed with the contempt sentencing. **And he failed to do so.**

(Gentile Br. 12–13) (citations omitted.) Skurko argues the same:

Wohleber asserts that Skurko had a duty to prevent Judge Boros from sentencing Wohleber. Ironically, Wohleber himself did nothing to prevent Judge Boros from sentencing him. At the sentencing hearing after Judge Boros indicated to Wohleber's attorney that she researched the issue and determined that the automatic stay did not apply, Judge Boros gave Wohleber's attorney the opportunity to provide any authority contradicting Judge Boros determination that the stay did not apply. Wohleber's attorney failed to provide any such authority.

(Skurko Br. 9–10) (citations omitted.)[13]

Skurko and Gentile argue that they had no duty to prevent the sentencing hearing from proceeding because by the time Wohleber's bankruptcy was filed, their involvement in the matter had ended, and what remained was a matter between the state court and Wohleber. Skurko and Gentile support this argument by citing *Rogers* v. *Overstreet* (*In re Rogers*), 164 B.R. 382 (Bankr. N.D. Ga. 1994). In *Rogers*, as in the present case, prior to the filing of a bankruptcy case a domestic relations court found the debtor to be in contempt of its orders, but issued an arrest warrant and imprisoned the debtor after he filed the petition. The debtor in that case sought damages under § 363(k) for his imprisonment, which was denied by the bankruptcy court.

The *Rogers* court acknowledged that "'a refusal or failure to take action is an act' within the meaning of § 362(a)" but held that that rule "applies only in cases where there is a duty to act in the first place." *Id.* at 391 (quoting *In re Dembek*, 64 B.R. 745, 750 (Bankr. N.D. Ohio 1986)). *Rogers* held that the defendants had no duty to act because "[t]he Defendants' involvement in the state court action was at an end" after the debtor had been found in contempt,

---

[13]Skurko and Gentile argue that only the state court could have violated the stay. This argument supports another policy reason for imposing the burden on creditors to prevent violations of the stay. As proved out in this case, courts are immune from liability for such determinations. Thus, the duty to protect debtors under such circumstances is appropriately placed on creditors.

therefore, "[t]he incarceration that occurred on the date the Debtor filed his petition was an act of the state court trying to enforce its judgment, and it was not an act of the Defendants." *Id.* at 391. While facts in *Rogers* are similar to the facts in this case, the applicability of *Rogers* ends there.

Unlike the present case, *Rogers* involved the enforcement of child support. Enforcement of child support and spousal support are not stayed by the automatic stay unless the collection is being sought from property of the estate. 11 U.S.C. § 362(b)(2). *See In re Bezosa*, 271 B.R. 46 (Bankr. S.D.N.Y. 2002) (use of contempt proceeding to collect support obligations from non-estate property is permissible). Further, such debts are not dischargeable in any form of bankruptcy. 11 U.S.C. § 523(a)(5).

Further as the *Rogers* court noted:

The troubles the Debtor has experienced have been brought on by himself. He has disregarded the authority of the state courts on repeated occasions by failing to pay his child support obligations. In fact, the state court has found him to be in contempt on three separate occasions over a period of less than two years. Ironically, it is the Debtor now who is complaining that the Defendants are disregarding the authority of the bankruptcy court.

The Debtor has attempted to entangle the bankruptcy courts with his state law domestic relations dispute. This Court wishes to make it clear that it will not serve as a haven for debtors who wish to escape their alimony, maintenance or support obligations. Such conduct by a debtor is contrary to the purposes underlying the Bankruptcy Code and is repugnant to the interests of justice. Had a party filed a timely motion early on in this case, the Court likely would have dismissed the Debtor's petition as a bad faith filing based upon the facts currently before it.

164 B.R. at 390. In *Rogers* the defendants "did take steps to try to prevent the Debtor's incarceration," in contrast to Skurko and Gentile who took no actions to prevent the incarceration. *Id.* at 391. Moreover, the evidence did not suggest that Wohleber has disregarded the authority of the state court to the extent Rogers did. Finally, Wohleber is not using bankruptcy "as a haven to avoid paying his alimony, maintenance or support obligations," but is paying the property settlement along with his other unsecured debts in a fair and orderly manner under his chapter 13 plan.

Finally, while there is no question that *Rogers* is not binding precedent in this circuit, it appears that *Rogers* may no longer be good law in the Eleventh Circuit either. In *Russell v. Caffey* (*In re Caffey*), an unreported Eleventh Circuit decision, a state court found the debtor to be in contempt for failing to make back child support payments just prior to a bankruptcy filing and was arrested just after the bankruptcy filing. 384 F. App'x 882, 884 (11th Cir. 2010) (*per curium*). There, as here, the creditor argued that once the debtor had been found in contempt, "she had no affirmative duty to delay the contempt order and arrest warrant because they materialized after her involvement in the proceedings ceased." *Id.* at 886. However, the Eleventh Circuit disagreed:

> We are doubtful of Russell's legal assertion about her responsibilities. *See* 11 U.S.C. § 362(a)(1) (prohibiting "the commencement or continuation" of judicial process to recover a debt); *In re Scroggin*, 364 B.R. 772, 781 (10th B.A.P. Cir. 2007) (holding that a "refusal to take affirmative action to get the garnishment stopped" is a willful violation of the automatic stay); *In re Johnston*, 321 B.R. 262, 282–86 (D. Ariz. 2005) (holding that creditor had affirmative duty to move to vacate state court contempt and arrest orders that were not themselves issued in violation of the automatic stay); 2 Alan N. Resnick & Henry J. Sommer, *Collier Bankruptcy Manual* ¶ 362.03[4] (3d ed. 2009) ("[L]evy of execution, restraining orders, civil arrest orders and exercise of any other postjudgment remedies are stayed.").

*Id.* at 887. The Eleventh Circuit held that the creditor "violated the stay by failing to vacate the state court orders . . . ."[14] *Id.*

The Eleventh Circuit is not alone in its holding that a finding of civil contempt does not relieve creditors of their duty to enforce the stay. More recent cases in other districts appear to be uniform in holding that creditors have a duty to stay the post-petition enforcement of pre-petition civil contempt orders issued by state courts. *See In re Johnston*, 321 B.R. 262, 282–86 (D. Ariz. 2005); *Siskin v. Complete Aircraft Servs., Inc.* (*In re Siskin*), 231 B.R. 514, 520 (Bankr. E.D.N.Y. 1999) ("defendants had an affirmative obligation to ensure that the outstanding Warrant of Arrest was not enforced."); *Goodman v. Albany Realty Co.* (*In re Goodman*), 277 B.R. 839, 842 (Bankr. M.D. Ga. 2001) ("even if the warrant were based on Debtor's

---

[14]The Eleventh Circuit also held that the creditor violated the automatic stay "by extracting payments from [the debtor] in exchange for his release." *Id.* Wohleber did not present any evidence that Skurko and Gentile attempted to extract such a payment in exchange for his release.

disrespect for the superior court, it is still being used as a collection device.  As a result . . . the arrest warrant is covered by the automatic stay.").  For these reasons, Skurko and Gentile had a duty to take affirmative action to prevent the use of the sentencing hearing and Wohleber's confinement to coerce payment of the dischargeable property settlement.

**D.  The Matter is Remanded for a Determination of Whether Skurko and Gentile Breached Their Duty to Take Affirmative Action to Prevent the Collection Activity on the Property Settlement and, If They Did, for a Determination of Damages**

Having determined that Skurko and Gentile had an affirmative duty to prevent the collection activity, our analysis turns to whether they breached that duty.  At trial, Skurko and Gentile failed to present evidence that they attempted to stop the sentencing hearing and Wohleber's confinement.  Instead, they argued that if they did have a duty to stop the collection action, there was nothing they could do. Skurko and Gentile argue that the state court judge did her own research, made up her own mind that she had could proceed, and gave them no opportunity to argue otherwise.  The bankruptcy court agreed with Skurko and Gentile stating that "[s]hort of at that hearing stating that they were waiving the obligation, I can't see what else could have been done here."  (Tr. 49:12–14.)

However, there were multiple options available to Skurko and Gentile to satisfy their duty.  They could have filed a motion for relief from the stay with the bankruptcy court and requested the state court to stay its contempt proceeding pending disposition of the stay motion.  If time did not permit, the other option was to first request the state court to stay its contempt proceeding until a motion for relief from the stay could be adjudicated.  Such an option would have permitted the bankruptcy court, which is the court with the most expertise as to the automatic stay, to determine the applicability of the stay in the first instance.  Skurko and Gentile could have also filed a motion to vacate the contempt order in light of the bankruptcy proceeding.  They also could have submitted an agreed order to hold the enforcement of the contempt order in abeyance so the underlying issues could be resolved in the bankruptcy court, which is exactly what Skurko and Gentile did, but only after Wohleber had spent nearly two weeks in jail.  Finally, perhaps the least appropriate and effective course of action would have been to obtain a determination after the sentencing hearing as to the effect of the stay on the

contempt proceeding.   At that time the bankruptcy court could have decided whether the sentencing hearing and confinement were void or voidable.  *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 910 (6th Cir. 1993).

Because the responsibility to prohibit violations of the stay is placed on creditors, not debtors, Wohleber's counsel's failure to prevent the stay from being violated is not relevant to the determination of liability.  However, Skurko's and Gentile's conduct is relevant.  There is no evidence in the record that Skurko took any of the available steps to prevent the sentencing hearing from proceeding and Wohleber's confinement in violation of the automatic stay.  When asked at oral argument what steps Skurko and Gentile took to prevent the sentencing hearing from proceeding, counsel only pointed to the notice of bankruptcy filing filed by Wohleber's counsel.  They did not refer to any action they took to prevent the sentencing hearing and Wohleber's confinement from occurring.

As discussed, courts have jurisdiction to determine whether their own proceedings are subject to the automatic stay; but, litigants proceeding in this way "proceed[] at [their] own risk." *Edward Cooper Painting, Inc.*, 804 F.2d at 940.  When courts proceed in error, actions violating the stay are invalid; resources spent there are likely wasted[15]; and sanctions may be assessed. That risk is increased in cases like this, when the state court determination is made sua sponte, without express findings and conclusions, and with no opportunity to argue the matter.  *See also Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 375 (6th Cir. 2008) ("state courts are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order."); and *Moore v. Nunnari* (*In re Moore*), 2009 Bankr. LEXIS 4544, at *13 (Bankr. N.D. Ohio March 20, 2009) ("[W]hen a state court incorrectly decides that the automatic stay does not apply to the proceeding before it, . . . any action taken by the state court in violation of the automatic stay is void *ab initio*.").

In sum, the Panel finds that Wohleber did present sufficient evidence to overcome the motion for judgment on partial evidence.  However, because Skurko and Gentile did not have an

---

[15]In *Pettibone*, the Sixth Circuit noted that only in "limited equitable circumstances" would actions violating the stay not be voided.  990 F.2d at 911.

opportunity to present evidence to the bankruptcy court, they are entitled to present evidence on whether they took affirmative action to prevent the sentencing hearing and Wohleber's confinement from occurring. If the bankruptcy court finds that they did not meet their duty to take such affirmative action to prevent the violation of the automatic stay, the bankruptcy court shall determine damages in accordance with § 362(k).

## VI. CONCLUSION

Upon the filing of Wohleber's bankruptcy, it was incumbent upon Gentile and Skurko to seek relief from the stay or to obtain a determination from the bankruptcy court that the stay did not apply. A creditor cannot sit idly by, appear at a collection proceeding, and allow the debtor to be jailed because he did not pay the judgment creditor's dischargeable debt. The burden was on the creditor and her legal counsel to stop the collection proceeding once the bankruptcy was filed. Absent evidence presented on remand by Skurko and Gentile during the completion of the liability portion of the trial of demonstrable efforts they made to prevent the sentencing hearing and Wohleber's confinement from occurring, the bankruptcy court shall determine Wohleber's damages in accordance with § 362(k).

For the for reasons stated, the decision of the bankruptcy court is reversed and the order finding no stay violation occurred is vacated. The cause is remanded for further proceedings consistent with this decision.